IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| ME2 Productions, Inc., <br><br> Plaintiff, <br><br> v. <br><br> DOES 1-5 <br><br> Defendants. | Case No.: 5:17-cv-131 |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff, ME2 Productions, Inc. ("Plaintiff") by and through its undersigned counsel, for and as its Complaint against Does 1-5 ("Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Law of the United States (17 U.S.C. §101 *et seq.*). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue in this district is proper pursuant to 28 U.S.C. §

1391(b) and 28 U.S.C. § 1400(a) as least one Defendant is believed to reside in this district and this division.

PARTIES

<u>Plaintiff</u>

2. Plaintiff is a Nevada corporation with principal offices in Los Angeles, California.

3. As set forth in greater detail below, this action involves the unauthorized acquisition and transfer of a copyrighted motion picture, "Mechanic: Resurrection" ("Mechanic") by the Defendants.

4. Mechanic was released to movie theaters on August 26, 2016 and for DVD sale and rental on November 22, 2016. Mechanic is presently available for rental at RedBox outlets or on iTunes.

5. Mechanic is the sequel to the 2011 action movie, "The Mechanic." In this sequel Arthur Bishop's lover is kidnapped by a foe. Bishop is forced to travel the globe to complete three impossible assassinations.

6. Plaintiff is protected by the Copyright Act in registration PA 1-998-057, August 2, 2016, preregistered as PRE 8863, and the copyright registration filed for the screenplay P Au 3-773-822. Exhibit A. Under the Copyright Act, Plaintiff, is the proprietor of the copyrights and each the related interest needed to

bring suit. Mechanic contains wholly original material that is subject to copyright protection.

7. At the time of the infringement, the motion picture Mechanic was only in cinemas throughout the U.S. As a result, the Mechanic has significant value and has been produced and created at considerable expense.

8. Defendants had notice of Plaintiff's rights through general publication and advertising, and more specifically the motion picture bore a proper copyright notice.

9. Plaintiff comes to this court seeking relief as its motion picture has been pirated and trafficked across the BitTorrent network, and illegally downloaded and distributed countless times globally with confirmed instances traced to North Carolina.

10. The true names of Defendants are unknown to Plaintiff at this time. Each Defendant is known to Plaintiff only by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider and the date and the time at which the infringing activity of each Defendant was observed. Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant's true name and will permit Plaintiff to amend this Complaint to state the same. Plaintiff further believes that additional information obtained will lead to the

identification of additional infringing parties, as monitoring of online infringement of Plaintiff's motion picture is ongoing.

## PEER-TO-PEER INTERNET

11. The manner of the transfer and copying of the Mechanic is accomplished by using a network called a "BitTorrent protocol". The BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data transfers for copying large files such as motion pictures. BitTorrent protocol has become one of the most common systems for users to illegally dispense huge amounts of data, including motion pictures, in digital format.

12. A file transfer using the BitTorrent protocol begins when a first user accesses the Internet through an ISP and intentionally makes a digital file, or 'seed', of a work available to the public from his or her computer. Subsequent users, referred to as 'peers,' access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm. Explanation quoted in part from *Patrick Collins, Inc. v. John Does* 1-28, No. 12-13670, 2013 WL 359759 at 5(E.D. Mich., Jan. 29, 2013).

13. The BitTorrent protocol relies on reciprocity. To keep the torrent working at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded. *Id.* at 5-6, quoting from Annemarie Bridy, *Is Online Copyright Enforcement Scalable?*, 13 Vand. J. Ent. & Tech. L. 695, 702 (footnotes omitted) (2011).

14. The use of BitTorrent requires multiple intentional acts. A user must load specific software, use the software to join the network, search for a file, and then select the file they wish to download. As each user or peer joins the network and requests a copy of a file, they form a type of social contract to not only download the file, but to be a part of the network to allow the file to be downloaded by others. Each new peer requesting the file receives pieces of the data from each peer who already has downloaded the file, and then in turn makes that content available to others.

15. Since the BitTorrent protocol also generally limits a peer's ability to download unless he or she also uploads or shares, there is substantial incentive for each peer to remain online and continue to make files available for other peers to

download because this will maximize his or her download speed and access to content.

16. The IP Address associated with each respective Defendant in Exhibit B has been observed to have been making Plaintiff's Mechanic motion picture as well as other motion pictures, available to others in furtherance of the BitTorrent network.

HARM TO PLAINTIFF AND OTHERS

17. Digital piracy, including BitTorrent piracy, costs the entertainment industry billions per year. According to the International Chamber of Commerce's Business Action to Stop Counterfeeiting and Piracy ("BASCAP"), the total international trade in counterfeit goods including pirated goods is estimated to be 991 billion by the year 2022. The estimated value of counterfeit and pirated products is between 1.9 and 2.3 trillion. The estimated jobs lost globally as a result of piracy and counterfeiting is between 4.2 and 5.4 million. [See http://www.iccwbo.org/Advocacy-Codes-and-Rules/BASCAP/BASCAP-Research/Economic-impact/Global-Impacts-Study/].

18. As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In the world of copyright law, taking someone's intellectual

property is a serious offense, punishable by large fines.  In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal.  But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing.  It hurts artists, the music industry, the movie industry, and others involved in creative work.  And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm." United States Senate.  Committee on Governmental Affairs. Subcommittee on Investigations, Sept. 30, 2003. 108th Congress. 1st sess.  Washington (statement by Sen. Levin, Committee Member).

19.     The impact of piracy is far greater than the mere loss of a single sale or loss due to the distribution of one copy of a motion picture.  Piracy undermines the economy, job base, and tax base on which our citizens rely and promotes a general disregard for the respect of rights of others.

20.     In North Carolina alone, the motion picture industry created over 11,000 jobs, contributed approximately 560 million in wages and created over 2700 production related jobs. In 2014, 15 motion pictures, including Vacation and The Longest Ride, and 8 television series, including Homeland and Under the

7

Dome, were filmed in whole or in part in North Carolina. In 2015, there were 3 motion pictures, including Sully, and 10 television series, including Homeland and Under the Dome, filmed in whole or in part in this state. [See Motion Picture Association of America website at http://www.mpaa.org/creating-jobs/#map]. Thus, the motion picture and television industries in North Carolina are significant. It only follows that any pirating of these industries will detrimentally impact not only the industry as a whole, but the state of North Carolina as well.

21. As such, it is clear that giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of intellectual property rights, and in particular the fight against counterfeiting and piracy are critical issues of importance to the both the United States of America and the State of North Carolina.

## COUNT I

### Copyright Infringement Of "Mechanic"

22. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

23. Defendants, without the permission or consent of Plaintiff, copied and distributed Plaintiff's motion picture through a public BitTorrent network.

24. Defendants' actions infringed Plaintiff's exclusive rights under The Copyright Act.

25. Defendants' conduct has been willful, intentional, in disregard of and indifferent to Plaintiff's rights with the intent to cause Plaintiff harm.

26. As a direct and proximate result of the Defendants' conduct, Plaintiff's exclusive rights under 17 U.S.C. §106 have been violated.

27. Plaintiff is entitled to damages pursuant to 17 U.S.C. §504 and attorney fees and costs pursuant to 17 U.S.C. §505.

28. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.

29. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further contributing to the infringement of Plaintiff's copyrights, the economy of piracy, and ordering that Defendants destroy all copies of the motion picture Mechanic made in violation of Plaintiff's rights.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and relief as follows:

1. For entry of a permanent injunction providing that Defendants shall be enjoined from directly or indirectly infringing Plaintiff's rights in the Copyrighted Mechanic, including without limitation by using the Internet to reproduce or copy

Plaintiff's Mechanic, to distribute Plaintiff's Mechanic, or to make Plaintiff's Mechanic available for distribution to the public, except pursuant to a lawful license or with the express authority of the Plaintiff. Defendants also shall destroy all copies of Plaintiff's Mechanic that they have collectively downloaded onto any computer hard drive or server without Plaintiff's authorization and (subject to the Order of Impoundment prayed for below) shall serve up all copies of the downloaded copies of Mechanic transferred onto any physical medium or device in their possession, custody or control.

2. For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyright pursuant to 17 U.S.C. §501; and b) otherwise injured the business reputation and business of Plaintiff by their acts and conduct set forth in this Complaint.

3. For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. §504, at the election of Plaintiff, in an amount to be determined at trial.

4. For an Order of Impoundment under 17 U.S.C. §§503 and 509(a) impounding all infringing copies of Plaintiff's Mechanic which are in Defendants' possession or control.

5. For Judgment in favor of Plaintiff and against Defendants awarding

Plaintiff's attorneys' fees, litigation expenses (including fees and costs of expert witnesses) and other costs of this action.

6. For Judgment in favor of Plaintiff against Defendants, awarding Plaintiff such further declaratory and injunctive relief as may be just and proper under the circumstances.

DATED: March 15, 2017

Respectfully submitted,

By: s/ Kathleen M. Lynch
Kathleen Lynch
NC Bar No. 37429
kml@lynchvansickle.com

R. Matthew Van Sickle
N.C. Bar No. 33516
rmv@lynchvansickle.com

Lynch Van Sickle, PLLC
201 Shannon Oaks Circle
Suite 200
Cary, NC 27511
(919) 469 5075

Attorneys for Plaintiff